Eliza J. Bollinger, Appellant, *v.* John Gallagher et al. $\begin{vmatrix} 163 & 245 \\ s170 & 85 \end{vmatrix}$

[Marked to be reported.]

*Husband and wife—Foreign laws—Evidence.*

A married woman living in Maryland bought at a sheriff's sale of her husband's goods certain personal property, and gave in payment therefor a note signed by herself, her husband and two sureties.   The note was subsequently paid by the wife and the sureties.   The husband entered Pennsylvania, taking some of the property with him, where it was again sold under an execution as his property.   The wife then brought an action to recover damages for the sale of the property. · At the trial expert evidence was offered to show that under the law of Maryland a married woman's note, to be binding upon her, must be signed by her husband. *Held*, that such evidence was competent.

If the joinder of the husband in the note was necessary under the law of Maryland to enable his wife to make a valid note capable of enforcement against her, and if the purchase was in fact made by her with this note on her own credit and the credit of her sureties, and its payment was by her and her sureties without aid from her husband, then the jury would have been warranted in finding that the property purchased with it belonged to her, and that she was entitled to recover its value in this action.

After the reason for the husband's signature was explained, the question of ownership was thereafter not a question of law, but a question of fact to be determined from all the circumstances connected with the transaction as they were presented by the evidence.

The construction of the statute of another state, by the courts of that state, may be shown either by one familiar with, or by the published reports of, the decisions made by such courts; or both methods may be used in the same case.

Argued May 25, 1894.   Appeal, No. 175, July T., 1893, by plaintiff, from judgment of C. P. York Co., April T., 1889,

No. 12, on verdict for defendants, John Gallagher and John P. Johns.    Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.    Reversed.

Trespass for wrongful levy, etc.    Before LATIMER, P. J.

At the trial it appeared that the property in dispute was a mule, a horse and a saddle and two bridles.    This property had formerly belonged to George Bollinger, plaintiff's husband. In 1887, under an execution against Bollinger, the property was sold in Maryland, and purchased by his wife, who gave therefor a note signed by herself, by her husband and by Jacob Bollinger and Thomas J. Gorsuch, her sureties.    The note was subsequently paid by plaintiff and her sureties.    In February, 1888, Bollinger went to Hanover, Pennsylvania, with the property in controversy, and on his way, with the property in his possession, it was seized by defendant John Gallagher, a constable, one of the defendants, under an attachment, at suit of John P. Johns, the other defendant.    Gallagher subsequently sold the property at public sale.

Plaintiff's counsel proposed to prove that prior to the first sale plaintiff arranged with Jacob Bollinger and Thomas J. Gorsuch that they would become her sureties for the price of any goods or property that she might purchase at the sale referred to, in order that she might be engaged in the business of farming therewith.    For the purpose of sustaining the issue on part of plaintiff showing the circumstances of the acquisition of the property, and the source and circumstances of plaintiff's title thereto ; and for the further purpose of showing that the property was purchased by her, with the design of being used by her in the business of farming, and that she acquired the title thereto from a source other than her husband, or upon his credit.

Objected to as irrelevant and misleading, and res inter alios ; she cannot put a construction upon her own acts.    It is not proposed to show how or by what means or in what way the alleged arrangement was made, whether in writing or verbally.

The Court : It seems to me that the offer as it stands is not admissible.

Mr. Fisher : Nor is she competent to testify to her designs and purposes.

The Court: I think she can show the fact that she did enter into the business of farming, and that she used this as her property in the business. Whether she communicated any such intention to the parties on the note I think is clearly irrelevant and inadmissible. I will exclude the offer as it stands. Bill sealed. [1]

Plaintiff's counsel offered to prove that prior to the sale mentioned, Jacob Bollinger and Thomas Gorsuch promised to become her security for any property purchased by her at the sale, for the purpose of engaging in the business of farming by her. For the purpose of showing the circumstances of the acquisition of her title, and that the property was purchased by her with and upon the credit of herself, and not upon the credit of her husband, and upon the credit of the separate business that she was proposing to engage in.

All former objections renewed (by Mr. Fisher), these are ex parte declarations, and acts that cannot affect the defendants in the case. Evidence rejected and bill sealed. [2]

Plaintiff's counsel offered to prove by a witness on the stand that he was a practicing lawyer of Westminster, Carroll county, Maryland, and a member of the bar of Carroll county, and also a member of the bar before the court of appeals; and to prove by him what is the unwritten law, or was, on October 15, 1887, and February 21, 1888, of the state of Maryland, in regard to the capacity and rights of a married woman in that state to acquire and hold personal property. For the purpose of sustaining the issue on the part of the plaintiff, and showing that at the time of the acquisition of the property claimed in this suit, and at the time of its alleged seizure, she had the legal right by the laws of her residence to acquire and hold as she did, as against her husband's creditors.

Mr. Fisher: This is objected to as not legal for the purpose offered; not the best evidence; that it embodies conclusions and inferences, and does not indicate what is meant by the unwritten law of the state of Maryland.

The Court: The plaintiff having offered in evidence, and the court having admitted the revised code of the state of Maryland for the purpose of showing what the written law of the state of Maryland is in regard to the rights and capacities of married women, this plaintiff included, we must reject the

offer to prove what the unwritten law is, the subject-matter being covered by the written law already offered in evidence by the plaintiff.

It strikes me, further, that the offer is to prove nothing more than custom under the acts of the legislature of Maryland which have been offered in evidence, which would not and could not have the force of law. The construction of the Maryland code, offered in evidence, is primarily for the Maryland court; and such construction by the court of appeals of Maryland would be received by us as a true exposition of the Maryland law. But in the absence of any such construction by the court of appeals of the state of Maryland revealing to us any intelligence, we regard the construction of the section read as for this court. Bill sealed. [3]

Plaintiff's points among others were as follows:

" 1. If the jury believe from the evidence that the goods were sold to the plaintiff, not upon her husband's credit, but solely on the faith the vendors and those who became her sureties had in her integrity and ability to pay the debt, she was entitled to hold them against her husband's creditors. *Answer:* We answer, that this question does not properly arise on the evidence in this case, because the plaintiffs have shown themselves affirmatively that the husband's credit, or at least his legal responsibility, did enter as an element into her purchase of this property." [8]

" 2. By the law of Maryland, as it is now and was October 15, 1887, and February 21, 1888, a married woman had the same rights as to the acquisition and holding of personal property as if she were a feme sole. Without any separate estate she could acquire property on her own credit, and hold it against her husband's creditors. *Answer:* For the reason stated in my answer in the first point, I state that the principles stated in this point are not applicable to this case, because it appears from the affirmative evidence of the plaintiff that the husband's credit or legal responsibility entered into her purchase." [9]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–3) rulings, (8–9) instructions, quoting instructions and bills of exceptions.

*Henry C. Niles, W. F. Bay Stewart* and *George E. Neff* with him, for appellant.—The court was in error in its construction of the Maryland statute.

Whether in view of the statutes, the common law and the practice and decisions of the courts of Maryland, a married woman could buy property upon credit under the circumstances revealed by the evidence in this case and hold against her husband's creditors was a question to be decided upon the evidence of the experts.   Technically this is a part of the unwritten law of a sister state.   It is to be proved by the testimony of one learned in the law: Dougherty v. Snyder, 15 S. &. R. 84; Ins. Co. v. Rosenagle, 77 Pa. 507.

There was surely sufficient evidence from which the jury might have believed, if allowed to pass upon the facts, that the goods were sold to plaintiff, not upon her husband's credit, but solely upon the faith the vendors and those who became her sureties had in her integrity and ability to pay the debt.   If they had so found, she was entitled to recover for the seizure.

*Henry L. Fisher, George G. Fisher, C. E. Ehrehart* and *Oscar L. Quinlan* with him, for appellees.—Even under the laws of Maryland the burden of proving plaintiff's alleged ownership by "clear and undoubted" evidence, was upon her.   It was incumbent upon her, in order to defeat the rights of the husband's creditor, to establish by clear and undoubted proof, a bona fide right and title to the property: Erdman v. Rosenthal, 60 Md. 312; Levi v. Levi, 69 Md. 348; Bollinger v. Gallagher, 144 Pa. 205.

There was no error in rejecting plaintiff's offer of "expert" testimony to prove what are the laws of Maryland concerning the rights and ownership of property by married women in that state.   The cases cited in support of this assignment of error (Dougherty v. Snyder, 15 S. & R. 84, and Ins. Co. v. Rosenagle, 77 Pa. 507) are not in point.   The laws of Maryland on this subject are not, as in those cases, either unwritten or those of a foreign state: Bock v. Lauman, 24 Pa. 444.

OPINION BY MR. JUSTICE WILLIAMS, July 12, 1894:

This case was in this court in 1891, and may be found reported in 144 Pa. 205.   The principal questions then raised

were, first, whether the attachment proceedings begun by Johns, before P. S. Bowman, Esq., against George Bollinger, were sufficient to support a seizure and sale of Bollinger's goods; second, whether, if they were sufficient as against the defendant therein, the plaintiff, who was the wife of George Bollinger, was bound to show a title in herself good against her husband's creditors to entitle her to recover; and, third, whether in the absence of proof to the contrary the laws of a sister state were to be presumed to be the same as our own, upon any question material to the rights of the parties.

Upon these questions the judgment appealed from was reversed, and a new venire awarded. A new trial has now been had. The plaintiff submitted to the jury the facts upon which she claimed title to the goods sold, and under the instructions of the learned judge of the court below these facts have been found insufficient to vest in her a title good against her husband's creditors. The important questions now raised are over the correctness of the instructions complained of, and are presented by the eighth and ninth assignments of error.

It appears that by the statutes of Maryland a married woman may acquire property by purchase, and when so acquired it is not liable for her husband's debts. She is authorized to give notes, but only when her husband joins in their execution. She may be sued jointly with her husband on such notes and the judgments obtained against them " shall be liens on the property of the defendants and may be collected by execution or attachment in the same manner as if the defendants were not husband and wife. " In 1886 and part of 1887 Bollinger and wife lived in Maryland. In October, 1887, the personal property of George Bollinger was sold by the sheriff of Carroll county. Eliza Jane Bollinger became a purchaser of property at this sale amounting to $747.45, under an arrangement that she was to pay for the same by giving her note, executed in accordance with the laws of Maryland, by herself and her husband, with Thomas J. Gorsuch and Jacob Bollinger as sureties. The husband was insolvent at the time, but his wife could execute a note that would bind her own property, only by his joining her in its execution. The sureties agreed with Mrs. Bollinger and the payee of the note, that if she was not able to pay the note at its maturity they would pay it for her and take a bill of sale of the

property.   When the note fell due she was able to pay but a small part of the money and Mr. Gorsuch lent her the balance necessary to pay the note and took a bill of sale as his security. This property, or portions of it so bought and paid for, was levied on in Pennsylvania, by Gallagher at the suit of Johns, as the property of George Bollinger, and sold.   Mrs. Bollinger gave notice of her claim, which was disregarded, and, after the sale, brought this suit to recover the value of the property.

The plaintiff's first point asked the court to charge : " If the jury believe from the evidence that the goods were sold to the plaintiff not upon her husband's credit, but solely on the faith the vendors and those who became her sureties had in her integrity and ability to pay the debt, she was entitled to hold them against her husband's creditors. "   The learned judge replied : " This question does not properly arise on the evidence in this case because the plaintiffs have shown affirmatively that the husband's credit or at least his legal responsibility did enter as an element into her purchase of this property."   By the plaintiff's second point the court was asked to say that under the law of Maryland a married woman had the same right to acquire and hold property as if she was sole.   This was answered in the same manner as the first point by saying that the point was not applicable to the case trying for the reason " that the husband's credit or legal responsibility entered into her purchase. "   If these answers give a correct exposition of the effect of sections 19 and 20 of the Revised Code of Maryland as adopted in 1878, then a married woman is no better off than she was before these sections were adopted.   If she can give a note that shall bind her in but one way, and that way is by having her husband join her in its execution, then it follows from these answers that her note so given for goods purchased and actually paid for by her and her friends at its maturity, does not give her any title to the goods so bought and paid for, but vests the title in her husband.   This result is reached not because the husband bought the goods, nor because he paid for them, or any part of them, but because his " legal responsibility entered into the purchase. "   That is to say, because the statute required him to join his wife in order to make her note binding on her in her own business, the fact that he did so, made the business his own and clothed him with the title to the property she purchased with the note.

We do not think this construction of the statutory provisions referred to has been adopted by the courts of Maryland, or ought to be adopted on principle. It does not serve to uphold but to nullify the law. It converts provisions evidently intended to enlarge the powers of a married woman, and enable her to make purchase of property on her own account, into a conduit to transfer to her husband and her husband's creditors the property so purchased by her. In this case that result is reached notwithstanding the fact that the note was actually paid by the wife and her friends without the contribution of a single dollar by the husband. The error of the learned judge was in treating the question of ownership as one of law for his determination instead of treating it as one of fact for the jury to consider and decide.

If the joinder of the husband in the note was necessary under the law of that state to enable his wife to make a valid note capable of enforcement against her, and if the purchase was in fact made by her with this note on her own credit and the credit of her sureties, and its payment was by her and her sureties without aid from her husband, then the jury would have been warranted in finding that the property purchased with it belonged to her, and that she was entitled to recover its value in this action. The joinder of the husband required explanation. It was explained by the Maryland statute which made it necessary to enable his wife to bind herself by her note. The question of ownership was thereafter not a question of law, but a question of fact to be determined from all the circumstances connected with the transaction as they were presented by the evidence. The eighth and ninth assignments of error are sustained.

We think the third assignment must also be sustained. The construction of the statute of another state, by the courts of that state, may be shown either by one familiar with, or by the published reports of the decisions made by such courts, or both methods may be used in the same case. The testimony of an expert may or may not be helpful, depending to some extent upon whether the precise question has arisen in some reported case, and been finally passed upon ; but the testimony offered was certainly competent, and it was error to reject it.

The rejection of the testimony referred to in the first and

second assignments of error was logical and consistent with the general view of the case entertained by the learned judge.    If the manner of the execution of the note was conclusive upon the question of ownership then the circumstances were unimportant.    But treating the case as depending on its facts, then so much of the evidence offered as might be necessary to show for whom the sureties agreed to become liable, and that it was upon the credit of Mrs. Bollinger and the business upon which she proposed to enter with the aid of the property bought by her that their undertaking was made, was competent and relevant.    To this extent the first and second assignments of error are sustained.

The judgment is reversed and a venire facias de novo awarded.