14487

RAUTON v. THE PULLMAN COMPANY

(191 S. E., 416)

496

March, 1936.

*Messrs. McKay & Manning* and *W. D. Tinsley,* for appellant,

*Messrs. W. K. Charles* and *Greene & Greene,* for respondent,

May 20, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The basic statement of the plaintiff's cause of action against the defendant is contained, in part, in the following three paragraphs of the complaint:

"2. That on the 18th day of July, 1935, the plaintiff purchased a railway ticket from The Southern Railway Company from Greenwood, S. C., to Mexico City, D. F., and return, and at the same time and place and for a consideration of Thirty Nine and 30/100 ($39.30) Dollars, purchased from the defendant, The Pullman Company, a ticket, No. 713, for accommodations designated as lower

berth No. 5 in case No. 578 from Greenville, S. C., to Mexico City, D. F., and return.

"3. That the said car No. 578 was especially requested by and assigned by the defendant to convey members of the Lions Club in South Carolina attending the International Convention to be held in Mexico City, D. F., of which plaintiff was a member.

"4. That under special arrangements with the defendant it was provided that the said car would remain in Mexico City during the convention, and for extra compensation be occupied by those having accommodations therein, and plaintiff paid to defendant the said extra compensation and occupied the same with the other members of the South Carolina Lions during the convention."

The allegations are admitted by the defendant.

The complaint goes on to allege that one or two days before the return trip was to be made from Mexico City, the plaintiff learned from the pullman authorities in that city that his berth in the pullman, lower 5, had been sold to other parties for the return trip; and, over his protest, knowing that all of the lower berths were already engaged, the local agent of the defendant struck out the figure "5" on his ticket, and inserted the figure "3" above it, which indicated another lower berth in the same car, but this berth also was occupied by some one else.

This action was brought against the defendant for the recovery of damages for willfully and negligently breaching its contract, the plaintiff alleging that by reason of its failure to give him the lower berth for the return trip, for which he had paid and contracted, he was forced, over his protest, to occupy an upper berth. He testified that he was made sick, nauseated, and physically indisposed while occupying the upper berth, due to the fact that the train on its route from Mexico City passed through a mountainous country, descended steep grades, and rounded sharp curves, and that the swaying and rocking of the pullman coach, on account

of the mountain curves, was emphasized and accentuated in the upper berth. He also testified that the upper berth was hot, lacked ventilation, and was more restricted in space than the lower berth—all of which contributed to his injury.

The defendant in its answer admits that the lower berth sold to the plaintiff was reissued and reassigned to other parties in Mexico City, but alleges that this mistake occurred because of an unusual situation and confusion created by the number of persons attending the International Convention of Lions, referred to, and the varied arrangements made, pertaining to pullman accommodations. It pleaded a general denial as to the remaining allegations of the complaint.

The chief issue presented on this appeal arises from the second defense set up by the defendant, wherein it is alleged that .the claim of the plaintiff is predicated upon wrongs alleged to have been committed within the Republic of Mexico, under whose laws the plaintiff is not entitled to recover punitive damages against the defendant; and, with reference to actual damages, would be entitled solely to the "damages" and "prejudices" resulting as the direct consequence of the lack of fulfillment of a contract; "damages," under the Mexican Civil Code, being defined to constitute "loss or deterioration in the patrimony through lack of fulfillment of an obligation," and "prejudices" being understood to mean "the deprivation of any licit gain which should have been obtained through the fulfillment of the obligation."

When the case was called for trial in the Circuit Court in Greenwood County, upon motion of the defendant the plaintiff elected to proceed on a cause of action sounding in tort, and the case was tried upon this theory.

The trial resulted in a verdict for the plaintiff.

The Pullman Company appeals, and.excepts to the refusal of the trial Judge to direct a verdict in its behalf, on the cause of action for actual damages; the exceptions also challenge the soundness of the trial Judge's instructions to the jury in certain particulars.

The appellant contends that under the applicable Mexican law the verdict should have been directed in its favor, and that, under that law, neither punitive nor actual damages in this case could properly be recovered.

When the motion was made, the trial Judge held that whatever offense was committed against the plaintiff occurred in Mexico, and that the sections of the Civil Code of the Republic of Mexico, introduced in evidence, governed the case, and that under that law no punitive damages were recoverable. He overruled the motion as to actual damages, and submitted this issue to the jury, under his interpretation of the Mexican law. Another issue on this appeal is that in so doing, he erroneously departed from the Mexican law, and applied the common law of South Carolina as the basis of recovery. The Mexican Civil Code on which this suit relies, as determined by the trial Judge, is found in the following sections:

"Article 2104. He who may be obliged to do something and may fail to do that thing or may fail to do it in the manner agreed upon shall be responsible for damages and prejudices in the following terms:

"I. If the obligation involves some term, responsibility shall begin from the date on which that term matures.

"II. If the obligation involves no specified term, the provisions of the last part of Article 2080 shall be observed. ,

"He who contravenes an obligation not to do something shall pay damages and prejudices through the sole fact of that contravention."

"Article 2107. The responsibility dealt with in this chapter involves in addition to the return of the thing, or its value, or both, as the case may be, the payment of the 'damages' and an indemnification for the 'losses.'

"Article 2108. By damages is understood loss or deterioration in the patrimony through lack of fulfillment of an obligation.

"Article 2109. By prejudices is understood deprivation of any licit gain which should have been obtained through the fulfillment of the obligation.

"Article 2110. The damages and prejudices must be the immedate and direct consequence of the lack of fulfillment of the obligation, whether already caused or necessarily to be caused."

Before proceeding to the consideration of the merits of this controversy, which involves a number of subsidiary questions, it is deemed best to first state.certain well-established principles of law bearing upon this situation, which furnish a pertinent and relevant legal background.

With reference to torts, the well-established rule is ■ that the law of the place where the injury was occasioned or inflicted, governs in respect of the right of action, and the law of the forum in respect to matters pertaining to the remedy only. *Northern Pac. R. Co. v. Babcock,* 154 U. S., 190, 14 S. Ct., 978, 38 L. Ed., 958; *Evey v. Mexican, Cent. R. Co.* (C. C. A.), 81 F., 294, 38 L. R. A., 387.

In this country the *lex loci* controls, even though ■ under the *lex fori* a different result as to tort liability would arise from the facts relied on. *Slater v. Mexican Nat R. Co.,* 194 U. S., 120, 24 S. Ct., 581, 584, 48 L. Ed., 900; *Northern Pac. R. Co. v. Babcock, supra;* *Huntington v. Attrill,* 146 U. S., 657, 13 S. Ct., 224, 36 L. Ed., 1123.

The following principle of law found in *Bridger v. Asheville & S. R. Co.,* 27 S. C., 456, 458, 3 S. E., 860, 13 Am. St. Rep., 653, was quoted with approval in *Rosemond v. Southern Railway,* 66 S. C., 91, 44 S. E., 574, 575: " 'The cause of action arose in North Carolina. The injury was inflicted there, and if the parties had remained in that state, and brought action there, they would have been compelled to stand or fall by the law there. And we cannot see, upon principle, how stepping over the line could give the plaintiff

a new and altogether enlarged cause of action—in fact, a cause of action which he did not have before, and therefore could not have enforced in the tribunals having jurisdiction of the matter at its origin.' *Sawyer v. Macaulay*, 18 S. C., 543; *Thornton v. Dean*, 19 S. C., 583, 45 Am. Rep., 796."

Unless the alleged wrong was actionable in the jurisdiction in which it was committed, there is no cause of action which can be carried to and asserted in any other jurisdiction. *Baltimore & Ohio S. W. R. Co. v. Reed*, 158 Ind., 25, 62 N. E., 488, 56 L. R. A., 468, 92 Am. St. Rep., 293. And see the numerous supporting authorities cited in the opinion in this case. Also see *Smith v. Southern Ry.*, 87 S. C., 136, 69 S. E., 18; *Dennis v. A. C. L. R. Co.*, 70 S. C., 254, 49 S. E., 869, 106·Am. St. Rep., 746.

The rule that if the law of the state or jurisdiction where the wrong is committed, when applied to the case, does not give a right of action against the wrongdoer, then no action can be sustained, is so well established that we may dismiss the question without further consideration.

Therefore, whatever would be a defense to this action if it had been brought in the Republic of Mexico is a defense here, although it would not be if the cause of action had arisen in South Carolina. This rule of the law has received the final approval of the American Law Institute, Restatement, Conflict of Laws, § 382, *et seq.*, and is supported by all of our eminent textwriters upon the subject, as will be seen by reference to the very recent case of *Gray v. Gray*, 87 N. H., 82, 174 A., 508, 94 A. L. R., 1404.

Upon the question of whether the measure of the damages for a tort, committed in one state and sued on in another, is determinable by the law of the forum or by the law of the place where the tort was committed, the great weight of authority supports the doctrine that the *lex loci delicti* controls. The measure of damages is regarded as pertaining to the substantive, rather than to the

merely remedial, rights of the injured person. *Western Union Tel. Co. v. Brown*, 234 U. S., 542, 34 S. Ct., 955, 58 L. Ed., 1457; *Slater v. Mexican Nat. R. Co., supra; Northern Pac. R. Co. v. Babcock, supra.* Also see the numerous supporting cases cited in the note under Section 29, 62 C. J., 1114, and monographic note on the subject in 91 Am. St. Rep., 714.

In the case at bar, the Mexican law was duly pleaded and proved; the bound volume of the Mexican Civil Code was submitted to the trial Judge and examined, and the pertinent sections thereof, introduced in evidence, were translated by a skilled and accomplished linguist who was present at the trial. The trial Judge held that the proof met the requirements of Section 716 of our 1932 Code. This volume, upon the argument before us, was exhibited to the Supreme Court, and we agree with the Circuit Judge.

The trial Judge also admitted in evidence, as an argument, a deposition of a Mexican lawyer, Mr. Salvador M. Cancino, who had practiced law for fifty successive years in the Republic of Mexico, in the City of Mexico. In this deposition he undertook to construe and interpret those sections of the Mexican Code introduced in evidence which was deemed by the trial Judge applicable to this case. The respondent objected to the deposition, on the ground that the Code sections were in evidence, and should be construed by the trial Judge, alone and unaided, and that any evidence by an expert as to the meaning of these statutes would be incompetent. The trial Judge stated that it would be received in the nature of an argument; it was thereupon read.

We think it was competent as a deposition.

The difficulties of making clear the real meaning of the Mexican law through a literal translation from Spanish into English created a situation that necessitated not only a literal translation, but also interpretation by one learned in the foreign law.

The Supreme Court of the United States in the *Slater case, supra,* speaking through the late Mr. Justice Holmes, said: "But what we last have said brings into consideration another error of the Circuit Court which hitherto we have not mentioned. The defendant offered the deposition of a Mexican lawyer as to the Mexican law. This was rejected, subject to exception, seemingly on the ground that the agreed translation of the statutes was the best evidence. So, no doubt, they were, so far as they went, but the testimony of an expert as to the accepted or proper construction of them is admissible upon any matter open to reasonable doubt."

In *Canale v. People,* 177 Ill., 219, 52 N. E., 310, it was held that where the Italian Code was produced in evidence, and it was claimed that the Code did not require certain formalities to render a marriage valid, testimony of witnesses learned in Italian law was admissible to show the construction of the statute in question.

The interpretation given of the law of a foreign country, state, or territory by its tribunals is an integral and essential part of the law itself, and should be stated by the witness. Chamberlayne's Modern Law of Evidence, Volume 1, § 896. This is especially true where the accepted or proper construction is open to reasonable doubt. 59 C. J., § 759, page 1211.

In *Bollinger v. Gallagher,* 163 Pa., 245, 29 A., 751, 753, 43 Am. St. Rep., 791, it was said: "The construction of the statute of another state by the Courts of that state may be shown either by one familiar with, or by the published reports of the decisions made by, such Courts, or both methods may be used in the same case. The testimony of an expert may or may not be helpful, depending to some extent upon whether the precise question has arisen in some reported case, and been finally passed upon; but the testimony offered was certainly competent, and it was error to reject it."

No judicial opinions of the Republic of Mexico were introduced in evidence. All that we have in the record are the

translated sections of the Mexican Code, held by the trial Judge to be applicable to the plaintiff's cause of action, and the testimony of Mr. Cancino contained in his deposition, in which he undertakes to interpret the Mexican law. No question has been raised as to the correctness of this evidence. However, the respondent contends, in his additional grounds to sustain the judgment, and in his brief, that the sections of the Mexican Code offered in evidence are not applicable; that they have reference only to damages *ex contractu*, and not to damages recoverablefor for the willful invasion of the rights of a party situated as was the respondent in this case. Therefore, it is asserted that the case should have been tried, and in legal effect was tried, according to the law of the forum, upon the presumption that the common law prevails in Mexico. It is further urged by the respondent that it would be against the public policy of this State to enforce the Mexican law, even if applicable.

However, it must be borne in mind that the plaintiff neither pleaded nor proved any other law of the Republic of Mexico which he deemed applicable to the facts in this case, and the testimony shows beyond dispute that if a tort was committed or his rights invaded, such wrong occurred within the Republic of Mexico. And that if there is no law giving a right of action in the place where the wrongful act was alleged to have been committed, no action therefor can be maintained in another state, although the law of the latter state affords such right of action. The logical alternative is not found in the application of local law to a foreign transaction, but in a refusal to deal with that transaction at all. If it is to be justiciable here it should be upon the basis of what it is there. *Gray v. Gray, supra.* The statutory law of Mexico having been introduced in evidence, no presumption can be indulged that the common law prevails in that country. Furthermore, Mr. Cancino testified that no other liability exists in Mexico in a case of this kind, except that provided in these Code sections.

A careful reading of the charge given by the trial ██ Judge to the jury leads inevitably to the conclusion that he construed the Mexican law in the light of the law prevailing in South Carolina, and applied the principles of our common law as defining and authorizing the infliction of actual damages, and all elements which usually enter into actual damages growing out of the commission of a tort. He held that the construction of the Mexican law with reference to damages should not be narrow, but should be broad. While the presiding Judge is not absolutely bound and controlled by the construction of the foreign law placed upon it by an expert witness, yet, in the absence of judicial decisions, where the accepted or proper construction is open to reasonable doubt, as it was in this case, such construction should not be ignored unless clearly obnoxious to the written law. We think that the trial Judge fell into error in his construction of the law.

It is evident that the word "patrimony" found in Article 2108 of the Mexican Code does not convey the same meaning in Mexico that it does here. With us, the word carries the meaning of "heritage, an estate or property held by ancient right; an ancient estate or endowment." Webster's International Dictionary, Second Edition. More popularly understood as an estate inherited from one's father.

In the deposition in evidence, "patrimony" is defined as "the total rights and obligations of a person valued in money; that is to say, anything not having pecuniary value may not form part of the patrimony of anyone."

In Article 2108, it is provided: "By damages is understood loss or deterioration in the patrimony through lack of fulfillment of an obligation." Therefore, keeping in mind the Mexican meaning of "patrimony," damages are understood to mean loss or deterioration in the total rights and obligations of a person valued in money, through lack of fulfillment of an obligation. Otherwise expressed, the rights lost or decreased in value must have a definite, ascertainable

pecuniary value. Patently, it has to do with contract, and with tangible things, rather than with intangible things, such as pain, suffering, or humiliation.

Article 2109 of the Mexican Code: "By prejudices is understood deprivation of any licit gain which should have been obtained through the fulfillment of the obligation." And it is provided in Article 2110 that the damages and prejudices must be the immediate and direct consequence of the lack of fulfillment of the obligation, whether already caused or necessarily to be caused.

Applying these legal precepts to this case, Mr. Cancino, the Mexican lawyer, interpreted them to mean that "the Pullman Company would be responsible to the plaintiff for damages and prejudices as defined in the Mexican Code, because that is the only responsibility and liability which exists, for whomsoever may fail to live up to the obligation of a contract, aside from the return of the thing, or its value, or both, as the case may be; that such damages and prejudices must be the immediate and direct consequences of the lack of fulfillment of the obligation, whether already caused or necessarily to be caused." The witness concluded that the plaintiff, under his construction of the Mexican Code, could recover nothing against the Pullman Company except such loss as he could prove possessed a pecuniary value. Such, for insance, as the difference in money value, as between the price of a lower berth and the price of an upper berth.

Under the South Carolina law, it was charged by the trial Judge that actual damages, such as were sustained by the plaintiff, flowing directly and proximately from the willful invasion of a right, may be assessed by the jury in money. Such is not our understanding of the Mexican law as derived from the written law itself, and the interpretation placed thereon by Mr. Cancino.

As we construe the Mexican law, it does not contemplate that physical pain may be converted into money nor estimated

in money. These Code sections apply to the pecuniary value of more tangible things, which are susceptible of having a determinable definite money value.

Proceeding, therefore, on our construction of the Mexican Code introduced in evidence, and also on the evidence adduced in this case as to the law of that country in this connection, we conclude that the trial Judge should have directed a verdict in favor of the defendant as to actual damages, because the injuries suffered by the plaintiff cannot be compensated for under that law.

The respondent contends that the foreign law should not be enforced in this state, because it contravenes our public policy. Logically, this contention puts him out of Court, because, if he has no cause of action under the foreign law, he has none in any other jurisdiction.

Be that as it may, the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other.

" 'It by no means follows that because the statute of one state differs from the law of another state, that therefore it would be held contrary to the policy of the laws of the latter state.   *   *   *   To justify a Court in refusing to enforce a right of action which accrued under the law of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens.' *Herrick v. R. Co.,* 31 Minn., 11, 16 N. W., 413, 414, 47 Am. Rep., 771; Goodrich on Conflict of Laws, 199. In *Loucks v. Standard Oil Co.,* 224 N. Y., 99, 121 N. E., 198, 201, the Court of Appeals of New York, in an opinion delivered by Cardozo, J., used this language: 'We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance; its presence shows beyond question that the foreign statute does not offend the

local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition. The misleading word "comity" has been responsible for much of the trouble. It has been fertile in suggesting a discretion unregulated by general principles.' " *Howard v. Howard,* 200 N. C., 574, 158 S. E., 101, 103.

Application of the principle that foreign laws will not be given effect, when contrary to the settled public policy of the forum, is often made in a certain class of cases, such, for example, as prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquor, and others. *Howard v. Howard, supra,* and see the authorities therein cited.

We see no merit in this contention.

The judgment of the lower Court is reversed, and the case remanded for entry of judgment in favor of the defendant, under Rule 27 of this Court.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Baker concur.