886 F.2d 85
 10 UCC Rep.Serv.2d 1183
 Caffie D. THORNTON, as Executrix of the Estate of Emmett M.
Lunceford, Jr., Deceased, Plaintiff-Appellant,
v.
CESSNA AIRCRAFT COMPANY, Defendant-Appellee.
Caffie D. THORNTON, as Executrix of the Estate of Emmett M.
Lunceford, Jr., Deceased, Plaintiff-Appellee,
v.
CESSNA AIRCRAFT COMPANY, Defendant-Appellant.
 Nos. 88-1156, 88-1158.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1989.
Decided Sept. 22, 1989.
 
 Richard Bruce Watson (Nelson, Mullins, Riley & Scarborough, Columbia, S.C., on brief), for plaintiff-appellant.
 Cameron B. Littlejohn, Jr. (A. Camden Lewis, Lewis, Babcock, Pleicones & Hawkins, Columbia, S.C., on brief), for defendant-appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Caffie D. Thornton, executrix of the estate of her deceased husband Emmett M. Lunceford, Jr., M.D., appeals from the grant of judgment on the pleadings in favor of Cessna Aircraft Company on her negligence and strict liability claims. Cessna cross appeals from the denial of its motion for partial judgment on the pleadings on Thornton's claim for breach of warranty. We affirm.
 
 I.
 
 2
 In 1984 Dr. Lunceford, a South Carolina resident, purchased a Cessna airplane in South Carolina from Jim Hamilton Aircraft, Inc., a South Carolina corporation. The airplane, which was manufactured in 1972 in Kansas, had been owned during the interim by a succession of entities. On January 16, 1985 Dr. Lunceford flew the airplane from South Carolina to Ohio. On the return trip the following day, he was killed when the airplane crashed in Tennessee.
 
 
 3
 In September 1985 Thornton brought a wrongful death action against Cessna and others in South Carolina state court alleging negligence, breach of implied warranty, and strict liability. After the other Defendants subsequently settled the claims against them, Cessna removed the action to federal court on the ground of diversity of citizenship. Thornton then filed a corresponding survival action which was consolidated with the wrongful death action. Cessna moved for judgment on the pleadings on the ground that all the claims were barred under a statute of repose codified in the Tennessee Products Liability Act which provides: "Any action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition must be brought ... within ten (10) years from the date on which the product was first purchased for use or consumption...." Tenn.Code Ann. Sec. 29-28-103(a) (1988). The district court found that the Tennessee statute applied and barred the tort claims, but ruled that South Carolina law governed the warranty claims. Thornton v. Cessna Aircraft Co., 703 F.Supp. 1228 (D.S.C.1988). The court accordingly granted judgment to Cessna on the negligence and strict liability claims and denied the motion regarding the warranty claims. These matters are now before this court on interlocutory appeal certified under 28 U.S.C.A. Sec. 1292(b) (West 1966 & Supp.1989).
 
 II.
 
 4
 The ultimate issue before the court is whether Tennessee or South Carolina law applies to Thornton's claims. It is well settled that a federal court sitting in diversity applies the conflict of laws provisions of the forum state, here South Carolina, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), if it does not violate due process to do so under the facts of the particular case. Allstate Ins. Co. v. Hague, 449 U.S. 302, 308, 101 S.Ct. 633, 637, 66 L.Ed.2d 521 (1981). Applying South Carolina law, we find that the Tennessee statute of repose is a substantive provision which does not contravene South Carolina public policy and applies to the tort claims since the injury occurred in Tennessee. We further find that application of the Tennessee statute does not violate due process. Lastly, we hold that South Carolina law applies to the warranty claims.
 
 A.
 
 5
 Under South Carolina law when an action is brought in one jurisdiction for a tort which caused injury in another jurisdiction, the substantive law is determined by the law of the state in which the injury occurred and procedural matters by the law of the forum. Algie v. Algie, 261 S.C. 103, 198 S.E.2d 529 (1973); Oshiek v. Oshiek, 244 S.C. 249, 136 S.E.2d 303 (1964); McDaniel v. McDaniel, 243 S.C. 286, 133 S.E.2d 809 (1963); Rauton v. Pullman Co., 183 S.C. 495, 501, 191 S.E. 416, 419 (1937). Thornton attempts to equate the Tennessee statute of repose to a statute of limitation and contends that it is procedural. However, the district court correctly held that the Tennessee statute is substantive.
 
 
 6
 As this court has previously recognized, statutes of limitation are critically different from statutes of repose. Goad v. Celotex Corp., 831 F.2d 508, 510-11 (4th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). In Goad, the court stated that: "Statutes of limitation ... are primarily instruments of public policy and of court management, and do not confer upon defendants any right to be free from liability, although this may be their effect." Id. at 511 (footnotes omitted). "In contrast ..., statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts committed long ago. Statutes of repose make the filing of suit within a specified time a substantive part of plaintiff's cause of action." Id.
 
 
 7
 Thus, statutes of limitation are procedural in that they "serve interests peculiar to the forum, and are considered as going to the remedy and not the fundamental right itself." Id. However, statutes of repose are substantive since "the time for filing suit is engrafted onto a substantive right created by law." Id. The Tennessee statute of repose, in particular, has been held to be substantive because its requirements "must be met before a cause of action under the [Tennessee Products Liability Act] can be established." Wayne v. TVA, 730 F.2d 392, 402 (5th Cir.1984), cert. denied, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985).
 
 B.
 
 8
 While South Carolina follows the traditional lex loci delicti rule in tort actions by applying the substantive law of the situs of the injury it will not do so when the foreign law is contrary to its settled public policy. Oshiek, 244 S.C. at 252, 136 S.E.2d at 305; Rauton, 183 S.C. at 501, 508, 191 S.E. at 419, 421-22. Thornton contends that although the injury occurred in Tennessee, the statute of repose should not be applied because it contravenes a South Carolina public policy which favors access to courts to remedy any wrong. The district court properly held that the absence of a comparable South Carolina statute of repose does not render the Tennessee statute contrary to South Carolina public policy.
 
 
 9
 The South Carolina Supreme Court has never utilized the Rauton public policy exception to avoid application of foreign laws which prevent South Carolina citizens from recovering for a wrong. See Oshiek, 244 S.C. 249, 136 S.E.2d 303. In Rauton, the court specifically stated that "the fact that the law of two states may differ does not necessarily imply that the law of one state violates the public policy of the other." 183 S.C. at 508, 191 S.E. at 422. Quoting other authorities, the court held that refusal to apply the law of another state is justified only if it is "against good morals or natural justice, or that for some other reason the enforcement of it would be prejudicial to the general interests" of the citizens of South Carolina. Id. (citations omitted). The court listed certain types of cases to which this policy applies: "[P]rohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquor...." Id. at 509, 191 S.E. at 422.
 
 
 10
 The only court which has applied the exception is a district court for the District of South Carolina. Mizell v. Eli Lilly & Co., 526 F.Supp. 589 (D.S.C.1981). There, the court refused to apply a novel California tort theory of market-share liability despite the fact that the tort arose in California. The theory would have placed liability on defendants uninvolved in the production of the product, in direct contravention of the settled South Carolina rule that a plaintiff is required to prove that his injury was caused by the tortious conduct of a particular defendant. The court found that the theory was a "radical departure from the body of products liability law that has developed in South Carolina" and that to apply it would violate the public policy of the forum. Id. at 596-97.
 
 
 11
 The Tennessee statute of repose is not a novel legal theory which radically departs from the settled substantive law of South Carolina. Further, the statute does not fall into any of the categories enumerated in Rauton and it is neither against good morals or natural justice nor prejudicial to the general interests of the citizens of South Carolina.
 
 C.
 
 12
 Aside from application of rules of the forum regarding conflict of laws, certain due process considerations must also be examined before making a final determination of which state's law to apply. See Allstate Ins. Co. v. Hague, 449 U.S. at 308, 101 S.Ct. at 637; John Hancock Mut. Life Ins. v. Yates, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930). In Hague, the Court stated that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." 449 U.S. at 312-13, 101 S.Ct. at 639-40.
 
 
 13
 In Yates, the Court found that a beneficiary's subsequent move to Georgia was not a sufficient contact to justify application of Georgia law to a claim for breach of an insurance policy that had been issued in New York by a Massachusetts insurer to a New York resident. Similarly in Dick, the Court found that due process was violated by application of Texas law to the interpretation of an insurance policy that was issued in Mexico by a Mexican insurer to a Mexican domiciliary covering a Mexican risk. The Court held that application of Texas law was not justified because the only contact with Texas was that the insured was a nominal resident of that state.
 
 
 14
 In Hague, the Court found that due process was not violated by application of Minnesota law to determine insurance policy coverage on an automobile accident that occurred in Wisconsin. 449 U.S. at 313, 101 S.Ct. at 640. The Court noted three significant contacts with Minnesota which collectively justified application of its law: 1) although the insured was a resident of Wisconsin, he had commuted to work in Minnesota every day; 2) Allstate regularly did business in Minnesota; and 3) the beneficiary became a Minnesota resident after the accident but prior to initiation of the suit. Id. at 313-20, 101 S.Ct. at 640-44.
 
 
 15
 Thornton contends that the single fact that the crash and resulting death occurred in Tennessee does not constitute a significant contact sufficient to support application of the Tennessee statute of repose. However, both the Supreme Court and this court have applied the law of the state that was the situs of an airplane crash on the basis of such a single contact. In Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), the Court stated that in crash cases, the forum court could apply the law of the place where either the injury or the negligence occurred. Id. at 15, 82 S.Ct. at 594. There, the Court applied the lex loci delicti rule of the forum state Oklahoma in holding that Missouri law applied to actions arising from a crash which occurred in that state. Id. at 16, 82 S.Ct. at 594. In Szantay v. Beech Aircraft Corp., 349 F.2d 60, 64 (4th Cir.1965), this court held that the substantive law of Tennessee applied to an action brought in South Carolina federal court arising from a crash in Tennessee. Similarly here, the occurrence of the crash in Tennessee is a significant contact sufficient to justify application of the Tennessee statute of repose.
 
 D.
 
 16
 Cessna incorrectly argues that a claim for breach of implied warranty resulting in personal injury should be treated as a tort action and that the Tennessee statute of repose should also bar Thornton's breach of implied warranty claims.
 
 
 17
 The South Carolina Commercial Code governs sales of chattels such as airplanes and allows recovery by users and consumers who are personally injured by breach of warranty. See S.C.Code Ann. Secs. 36-2-318, 36-2-715(2)(b) (Law.Co-op.1977). Since a claim for breach of warranty arises under the Code, not general tort liability, the traditional lex loci delicti rule does not apply. Rather, the Code contains a specific conflict of laws rule which provides:[W]hen a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of another state or nation shall govern their rights and duties. Failing an agreement, this title applies to transactions bearing an appropriate relation to this State.
 
 
 18
 S.C.Code Ann. Sec. 36-1-105(1) (Law.Co-op.Supp.1988). Although South Carolina's courts have not interpreted the term "appropriate relationship," in In re Merritt Dredging Co., Inc., 839 F.2d 203 (4th Cir.1988), we used the "most significant relationship" test as a method to determine whether there was an "appropriate relationship" to South Carolina. Id. at 207. Here, since plaintiff's decedent was a resident of South Carolina, he purchased the airplane in South Carolina, he acquired the protections of the warranty in South Carolina, and he permanently stored and maintained the airplane in South Carolina, the breach of warranty claim bears an appropriate relationship to South Carolina. See McHugh v. Carlton, 369 F.Supp. 1271 (D.S.C.1974), aff'd, 538 F.2d 324 (1976) (Table) (reasoning that since sale of the allegedly defective product occurred in South Carolina, that state's law should apply to warranty action against seller and manufacturer for injuries received in another state).
 
 
 19
 Some support for Cessna's position that the law of the state in which the injury occurred controls in actions for breach of warranty can be found in two prior decisions of this court. Farish v. Courion Indus., Inc., 754 F.2d 1111 (4th Cir.1985); Bilancia v. General Motors Corp., 538 F.2d 621 (4th Cir.1976). In these cases we held that for purposes of an identical provision in the Code of Virginia, Va.Code Ann. Sec. 8.1-105 (Supp.1989), the place of the injury had an appropriate relationship to the transaction to make the law of the state in which the injury occurred controlling. However, in Farish and Bilancia, we were applying Virginia law and held that under Virginia law and the facts present the law of the state in which the injury occurred controls in breach of warranty claims. A different result is reached by application of South Carolina law to the facts at hand. For this breach of warranty claim, the most significant relationship is to South Carolina, and South Carolina law should apply.
 
 
 20
 The district court correctly concluded that South Carolina law applies to Thornton's breach of warranty claims. And since those claims are not barred by the Tennessee statute of repose, Cessna's motion for judgment on the pleadings was properly denied.
 
 III.
 
 21
 Having concluded that Tennessee law applies to bar Thornton's negligence and strict liability claims, we affirm the grant of judgment on the pleadings in favor of Cessna on those claims. Having further concluded that the Tennessee statute of repose does not apply to the breach of warranty claims, we affirm the denial of judgment on the pleadings in favor of Cessna on those claims and remand for further proceedings.
 
 
 22
 AFFIRMED AND REMANDED.