**LIBERTY CORPORATION, as Sponsor & Administrator for Liberty Corporation Medical Benefits Plan, Plaintiff–Appellant,**

v.

**NCNB NATIONAL BANK OF SOUTH CAROLINA, as Personal Representative for the Estate of John M. Bristow, Defendant–Appellee.**

No. 92–1370.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 27, 1992.

Decided Jan. 29, 1993.

---

1384

Robert David Black, argued, Greenville, SC, G. Randall Taylor (on brief), Butler, Means, Evins & Browne, Spartanburg, SC, for plaintiff-appellant.

Edward Randolph Cole, argued, Drennan, Shelor, Cole & Evins, P.A., Spartanburg, SC, for defendant-appellee.

Before WIDENER, HALL, and LUTTIG, Circuit Judges.

## OPINION

LUTTIG, Circuit Judge:

The Liberty Corporation brought an action for reimbursement against the personal representative of John W. Bristow's estate, NCNB National Bank of South Carolina, after paying the medical expenses incurred by Bristow following an automobile accident. The district court granted NCNB's motion for summary judgment. We affirm.

### I.

On October 21, 1989, Bristow's automobile was struck by a dump truck in Char-

lotte, North Carolina. Bristow was severely injured and died ten days later. At the time of the accident, Bristow was an employee of the Liberty Life Insurance Company and was covered by a group health plan ("the Plan") administered by appellant, the Liberty Corporation ("Liberty"). Liberty paid $93,829.50 in medical bills on Bristow's behalf.

The Plan includes a subrogation provision obligating Bristow to repay Liberty for any medical expenses that he recovered from third parties.[1] After Bristow died, Liberty and NCNB National Bank of South Carolina ("NCNB"), as the personal representative of Bristow's estate, entered into an analogous "Third–Party Liability Reimbursement Agreement" under which Bristow's estate agreed

> to reimburse the Benefits Plan for any medical or dental expenses or loss of earnings benefits which are paid by the Liberty Life Benefits Plan, or will be paid by it, which expenses or benefits arise out of the accident or illness commencing 9/21/89, if payment is received from a third party or its insurer.

J.A. at 101.

On October 10, 1990, the Spartanburg County, South Carolina, Probate Court approved a proposed settlement between NCNB and the driver of the dump truck, Dale Lavone Rankin, and its owner, the F.T. Williams Company. Under the settlement, Rankin and Williams agreed to pay to NCNB $1,500,000, "to be distributed as hereinabove set forth pursuant to the North Carolina Wrongful Death and Intestate Succession Acts." Probate Court Order at 4. NCNB subsequently offered to pay $1,160 to Liberty as reimbursement of the medical expenses Liberty had paid on Bristow's behalf. This sum represented the maximum amount that may be recov-

---

**1.** The subrogation provision provides:

 10.07 *Return of Overpayment*
 Payment made for charges must be returned to the Plan if: ... benefits are paid to or on behalf of a Covered Individual who has: ... Medical or Dental charges ... for which a third party is acknowledgedly liable or found to be legally liable by a Court of competent jurisdiction.

The insured individual will reimburse the Plan the amount of benefits paid. However, the reasonable pro rata expenses, such as lawyer's fees and court costs, incurred in effecting the third party payment may be deducted from the repayment to the Plan.
 J.A. at 79–80.

ered for reasonable hospital and medical expenses under the North Carolina Wrongful Death Act, N.C.Gen.Stat. § 28A–18–2, less a *pro rata* share of the cost of pursuing the claim against Rankin and Williams.

Liberty thereafter brought an action against NCNB in the United States District Court for the District of South Carolina seeking (1) a declaration that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, preempted the North Carolina Wrongful Death Act to the extent that it deprived Liberty of its subrogation rights under the Plan, and (2) damages for NCNB's breach of the reimbursement agreement. *See* J.A. at 4–9. It sought recovery from NCNB of $72,561.17, the amount in medical bills that it had paid on Bristow's behalf, less its *pro rata* share of pursuing the wrongful death claim. Both parties moved for summary judgment. The district court granted NCNB's motion, concluding that ERISA did not preempt the North Carolina Wrongful Death Act and that NCNB had "offered to pay to Liberty the maximum allowed by the law." *See* 786 F.Supp. 552, 555 (D.S.C. 1992). This appeal followed.

## II.

Liberty advances essentially four arguments before this court. First, it argues that the district court erred in applying North Carolina law rather than South Carolina law. Second, it contends that the North Carolina Wrongful Death Act does not bar its full reimbursement for Bristow's medical expenses under the Plan and that, to the extent that the statute does limit reimbursement, it is preempted by ERISA. Third, Liberty contends that it also has a subrogation claim to a portion of the wrongful death recovery proceeds under the terms of the reimbursement agreement. Finally, Liberty argues that it is entitled to equitable subrogation, independent of the Plan or the reimbursement agreement. We reject each of these arguments.

## A.

■ Liberty, a South Carolina corporation, first contends that the substantive law of South Carolina should apply to this case. As the district court recognized, however, South Carolina has long adhered to the rule of *lex loci delicti,* that the law of the place where the injury occurred governs the disposition of tort claims. *See, e.g., Thornton v. Cessna Aircraft Co.,* 886 F.2d 85, 87–88 (4th Cir.1989); *Wright v. American Flyers Airline Corp.,* 263 F.Supp. 865, 869 (D.S.C. 1967); *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E.2d 303, 305–06 (1964). Rather than directly challenge this well-settled rule, Liberty argues that application of North Carolina's wrongful death statute violates "the public policy of South Carolina as set forth in Section 38–71–190 of the South Carolina Code." Appellant's Br. at 22. Although Liberty does not specify either the public policy that it believes is embodied in section 38–71–190 (other than by asserting without support that it "provides liberal rights for subrogation," Appellant's Br. at 22) or the manner in which it contends that that policy is violated by North Carolina's wrongful death statute, presumably it believes that this section guarantees an insurer full recovery of amounts paid. We disagree.

Section 38–71–190 simply provides that

[a]ny policy or contract of accident and health insurance issued in this State may include provision for subrogation by the insurer to the insured's right of recovery against a liable third party for not more than the amount of insurance benefits that the insurer has paid previously in relation to the insured's injury by the liable third party.

S.C.Code Ann. § 38–71–190 (Law.Co-op. 1989). That is, it authorizes the inclusion of insurer subrogation provisions in accident and health insurance contracts. Nothing in this provision even arguably purports to guarantee full recovery by subrogated insurance companies.

■ We also reject Liberty's alternative argument for the inapplicability of North Carolina law, that as a South Carolina-appointed personal representative, NCNB "had no capacity to bring suit in North Carolina." *See* Appellant's Br. at 23.

Whether NCNB could actually have maintained a suit in North Carolina is irrelevant to the resolution of this case, since the third party settled before NCNB filed suit. *See* 786 F.Supp. at 553 n. 1. We conclude, therefore, given that Bristow was injured in Charlotte, North Carolina, that the district court correctly applied North Carolina law.

### B.

No more than $1,500 of the $1,500,000 settlement that NCNB recovered could be applied in payment of Bristow's "reasonable hospital and medical expenses" under North Carolina's wrongful death statute.[2] NCNB offered to pay Liberty this statutory maximum minus a *pro rata* share of the cost of pursuing the wrongful death claim.[3]

### 1.

■ Despite the plain language of the statute, Liberty challenges application of the $1,500 statutory cap on the ground that its "entitlement to be reimbursed for medical expenses paid on behalf of the decedent should be construed as a 'right' and not as a 'debt' under the North Carolina Wrongful Death Statute." Appellant's Reply Br. at 1. In support of that argument, it relies on *Byers v. North Carolina State Highway Comm'n*, 3 N.C.App. 139, 164 S.E.2d 535, 541 (1968), *aff'd*, 275 N.C. 229, 166 S.E.2d 649 (1969).[4] Liberty's reliance on *Byers* is

misplaced. That case turned simply on the permissibility of the lower court's consideration of new evidence. The court of appeals explicitly noted that the conflict between the statutory subrogation provision and the Wrongful Death Act was not "presently before [it]," and accordingly "refrain[ed] from expressing any opinion on it." 164 S.E.2d at 541. Even the *Byers* court's *dictum*, suggesting that the subrogation provision of the Workmen's Compensation Act would still apply in wrongful death actions, *id.*, does not bear on the case before us. Liberty's alleged subrogation rights stem not from the Workmen's Compensation Act, or from any other statute, but from the Plan and the reimbursement agreement.

At argument, Liberty also contended that under *In re Peacock*, 261 N.C. 749, 136 S.E.2d 91 (1964), it was not subject to the statutory cap. In *Peacock*, however, the court explicitly acknowledged that in a wrongful death action, "the limitation fixed in the statute for payment of hospital and medical expenses would control," *id.* 136 S.E.2d at 93, and in that case, it limited recovery under the Wrongful Death Act to the statutory maximum, *id.* at 95. The court did, in the first instance, allocate the recovery amount equally between the wrongful death action and the action for the decedent's personal injuries and medical expenses. It did this, however, only because it could not discern how much of

---

**2.** The statute provides as follows:

> When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled him to an action for damages therefor, the person or corporation that would have been so liable ... shall be liable to an action for damages to be brought by the personal representative or collector of the decedent.... *The amount recovered in such action is not liable to be applied as assets, in the payment of debts* or legacies, *except as to ... reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1,500) incident to the injury resulting in death;* ... but shall be disposed of as provided in the Intestate Succession Act.

N.C.Gen.Stat. § 28A–18–2(a) (emphasis added). Under the North Carolina Intestate Succession Act, Bristow's wife and mother are his beneficiaries. *See* N.C.Gen.Stat. §§ 29–14, 29–15(3).

**3.** Liberty does not challenge the reduction for litigation expenses; the Plan itself provides for such a reduction in reimbursement. *See supra* note 1; J.A. at 80.

**4.** In *Byers*, the decedent's employer, seeking reimbursement of medical expenses out of the administratrix's settlement with a third party, argued that the subrogation provision in the North Carolina Workmen's Compensation Act, N.C.Gen.Stat. § 97–10.2(f)(1)(c), should effectively override the statutory cap in the state's Wrongful Death Act. On appeal from the state highway commission, the state superior court considered new evidence and held that the Wrongful Death Act prevailed over the subrogation provision. The court of appeals reversed the superior court for considering the new evidence, observing that without the new evidence, the Wrongful Death Act did not prevent subrogation. *See* 164 S.E.2d at 540–41.

the settlement was attributable to each cause of action but believed that the settlement was predominantly attributable to the personal injury action, *see id.* at 93.[5] Here, of course, NCNB's settlement was indisputably only for wrongful death. *See* Probate Court Order at 3. Neither *Byers* nor *Peacock*, therefore, precludes the application of section 28A–18–2's $1,500 limit to Liberty's recovery of medical expenses.

### 2.

■ Even if the $1,500 cap would otherwise apply, Liberty argues, ERISA preempts its application. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" within its scope. 29 U.S.C. § 1144(a).[6] "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). ERISA preemption is "conspicuous for its breadth" and not limited to "state laws specifically designed to affect employee benefit plans." *FMC v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990). Despite the breadth of this preemption, however, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901; *see also District of Columbia v. Greater Wash. Bd. of Trade,* —— U.S. ——,

—— n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992); *Powell v. Chesapeake & Potomac Tel. Co.,* 780 F.2d 419, 421 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). Like the district court, we conclude that the North Carolina Wrongful Death Act, if it affects the Plan at all, does so in "too tenuous, remote, or peripheral a manner" to warrant preemption. The Plan only required Bristow to reimburse Liberty for medical benefits paid to him or on his behalf by a third party. *See* J.A. at 79–80. Bristow thus subrogated to Liberty only his right to recover from third parties compensation for his medical expenses. The right to recover for wrongful death under section 28A–18–2 is not, however, a right that ever belonged to Bristow or to his estate. Rather, it belongs to Bristow's beneficiaries, on whose behalf NCNB pursued the claim. *See, e.g., In re Estate of Below,* 12 N.C.App. 657, 184 S.E.2d 378, 381 (1971) ("In receiving funds paid in settlement of a wrongful death claim a personal representative ... is not acting for the estate but as the trustee for the beneficiaries under the law."); *accord In re Estate of Proctor,* 79 N.C.App. 646, 340 S.E.2d 138, 140 (1986); *see also In re Estate of Ives,* 248 N.C. 176, 102 S.E.2d 807, 810 (1958) (" 'The right of action for wrongful death, being conferred by statute at death, never belonged to the deceased, and the recovery is not assets in the usual acceptation of the term.' " (quoting *Lamm v. Lorbacher,* 235 N.C. 728, 71 S.E.2d 49, 52 (1952))). This right was never

---

**5.** *Peacock* predated the 1969 amendments to the North Carolina wrongful death statute. Before the effective date of these amendments, damages in wrongful death actions were limited to compensation for pecuniary loss: "the *present value* of the *net pecuniary worth* of the deceased based on his life expectancy." *Bowen v. Constructors Equip. Rental Co.,* 283 N.C. 395, 196 S.E.2d 789, 803 (1973). Similarly, before the 1969 amendments, a personal representative could only obtain damages for pain and suffering, hospital and medical expenses, or punitive damages through a common law personal injury action. *Id.* at 806. The 1969 amendments eliminated the need for a separate cause of action in addition to one under the Wrongful Death Act, by permitting the personal representative to seek in a wrongful death action all of the damages that it could formerly have sought only in a separate survival action. *See* Act of

Apr. 14, 1969, ch. 215, 1969 N.C.Sess.Laws 194; *Bowen,* 196 S.E.2d at 801–07 (discussing changes effected by 1969 amendments); *see also Forsyth County v. Barneycastle,* 18 N.C.App. 513, 197 S.E.2d 576 (North Carolina Wrongful Death Act, as amended in 1969, barred creditor of decedent's estate from recovering out of wrongful death settlement), *cert. denied,* 283 N.C. 752, 198 S.E.2d 722 (1973). Now such damages are available in a wrongful death action. *See* N.C.Gen.Stat. § 28A–18–2(b)(1), (2), (5).

**6.** ERISA's "saving" clause exempts from preemption state laws that directly regulate insurance, and its "deemer" clause limits that exemption. *See* 29 U.S.C. § 1144(b)(2)(A), (B). Neither party contends that either the "saving" or "deemer" clauses is implicated in this case.

subrogated. Because Liberty never had a subrogated right under the Plan to any of the wrongful death settlement proceeds recovered on behalf of Bristow's beneficiaries, section 28A–18–2's cap on medical expenses does not "relate to" the Plan within the meaning of ERISA and thus is not preempted by that Act.

Neither our recent decision in *Hampton Industries v. Sparrow*, 981 F.2d 726 (4th Cir.1992), where the plan administrator had a subrogation right because the plan participant was herself the settling party, nor the cases upon which Liberty relies are to the contrary. *See FMC, supra; Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Baxter ex rel. Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989). In each of those cases, the preempted state law would have prevented the plan administrator from exercising its rights under the plan to obtain reimbursement out of damages recovered by or on behalf of the same person whose medical expenses it had paid.[7] In this circumstance, unlike here, the conflict between the state law and the ERISA plan must be resolved in favor of the plan and therefore in favor of preemption.

### C.

■ Liberty next argues that the district court erred in rejecting its claim that NCNB breached the reimbursement agreement. Liberty contends that its rights under the agreement "are arguably enforceable notwithstanding the Wrongful Death Act." Appellant's Br. at 19. We disagree. Under that agreement, Bristow's estate committed to reimburse Liberty for any recovery from a third party arising out of Bristow's accident. In return, Liberty simply agreed to pay Bristow's medical expenses.[8] Because Liberty was already obligated to pay those expenses under the terms of the Plan, the reimbursement agreement fails for lack of consideration. *See, e.g., Sinclair v. Travis*, 231 N.C. 345, 57 S.E.2d 394, 400 (1950) ("[I]t is generally held that 'a promise to perform an act which such promisor is already bound to perform is insufficient consideration for a promise by the adverse party.'" (citation omitted)); *City of Spartanburg v. Spartan Villa*, 273 S.C. 1, 253 S.E.2d 501, 503 (1978) ("A promise by a party to do that which it had already legally obligated itself to do is not a valid consideration.").[9]

### D.

■ Finally, Liberty contends that it was entitled to "equitable subrogation" to prevent the "unjust enrichment" of Bristow's heirs. *See* Appellant's Br. at 19. Because Liberty did not properly raise this issue below, we decline to address it on appeal. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). The district court never mentioned an equitable subrogation claim, and Liberty's complaint stated only two causes of action: (1) "subrogation rights *according to the terms of the Plan and Federal law*"; and (2) breach of the reimbursement agreement. J.A. at 4–9 (emphasis added). Nor did Liberty mention such a cause of action in its motion for summary judgment. *See id.* at 13–29.

---

7. Presumably, for instance, if Bristow's wife, who was also injured in the accident and was herself a Plan participant, had brought an action to recover medical expenses incurred for her own injuries, Liberty would have been entitled under the Plan to reimbursement from any damages received.

8. The district court did not rely on this ground in its memorandum opinion. *See* 786 F.Supp. 552. However, it addressed the point at length during the summary judgment hearing. *See* J.A. at 136–38, 140–41, 157–58.

9. NCNB maintains that the only reason that it signed the reimbursement agreement was that Liberty refused to comply with its obligations under the Plan unless NCNB executed the agreement. Appellee's Br. at 18. Liberty denies this charge. *See* Appellant's Reply Br. at 3. Liberty, however, has failed both below and in its briefs and argument before this court, to recite anything that it gave to NCNB in consideration of the estate's promise of reimbursement.

**1390**

Liberty points to only one, minor reference to equitable subrogation in the entire record.[10] As the Supreme Court explained in *Singleton*, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." 428 U.S. at 121, 96 S.Ct. at 2877. On the facts of this case, Liberty's lone passing reference to equitable subrogation in response to a hypothetical question does not warrant a departure from the general rule. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) ("fleeting references" do not preserve questions on appeal), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986); *Monarch Life Ins. Co. v. Elam*, 918 F.2d 201, 203 (D.C.Cir.1990) ("[V]ague, arguable references to the point in the district court proceedings do not, of course, preserve the issue on appeal."); *Kensington Rock Island Ltd. Partnership v. American Eagle Historic Partners*, 921 F.2d 122, 124–25 (7th Cir.1990) ("Arguments raised in the District Court in a 'perfunctory and underdeveloped ... manner' are waived on appeal." (citation omitted)).

## CONCLUSION

For the reasons stated herein, the judgment of the district court is affirmed.

**AFFIRMED.**

**10.** During the summary judgment hearing, the court asked Liberty's counsel if the claim that NCNB had breached the reimbursement agreement depended on NCNB's recovery from a third party. Counsel's response to that question was: "That's correct. Well, *we would have an equitable claim of subrogation, I guess*, under—that's separate from our claim of subrogation under the plan, which is legal subrogation under count one, or our right of subrogation or reimbursement under count two under the reimbursement agreement." *Id.* at 128 (emphasis added). Neither Liberty nor the court pursued this comment.

**1.** The confusion in this case arises from the structure of North Carolina's Wrongful Death Act. In 1969, North Carolina combined its survival action (recovery for injuries to the decedent) with its wrongful death action (recovery for injuries to the survivors). After the actions were combined, the personal representative was required to seek, in a single suit, recovery for all losses stemming from the decedent's death. *See*

K.K. HALL, Circuit Judge, dissenting:

Because I conclude that the Wrongful Death Act's anti-subrogation provision, N.C.Gen.Stat. § 28A–18–2(a), "relates to" the operation of Liberty's ERISA Plan ("Plan"), I dissent.

### I.

After Mr. Bristow's accident, the Plan paid $93,829.50 in medical bills on his behalf. Under the North Carolina Wrongful Death Act, Bristow's personal representative had the right to recover *all* of these medical costs from the tortfeasor who injured Bristow. N.C.Gen.Stat. § 28A–18–2(b) ("Damages recoverable for death by wrongful act include: (1) Expenses for care, treatment and hospitalization incident to the injury resulting in death ..."). When NCNB, acting as Bristow's personal representative of the estate and trustee for Bristow's statutory beneficiaries under the Wrongful Death Act,[1] settled *all* claims arising from Bristow's death, this settlement necessarily included some payment for Bristow's medical expenses.[2]

After the settlement, the Plan attempted to subrogate $72,561.17 (Bristow's medical costs minus the Plan's pro rata share of his attorneys' fees) from NCNB. NCNB of-

Majority Op. at p. 1388 n. 5, *relying on Bowen v. Constructors Equip. Rental Co.*, 283 N.C. 395, 196 S.E.2d 789, 801–807 (N.C.1973). However, because of the Act's structure, recoveries for the decedent's medical costs are arguably not treated as assets of the estate. *Compare*, N.C.Gen. Stat. § 28A–18–2(a), with *Bowen*, 196 S.E.2d at 807.

**2.** NCNB is estopped from arguing that it did not recover *some* of Bristow's medical expenses by its attempt to pay the statutory maximum for recovered medical expenses. Because the $1,500,000 settlement was structured as a lump sum, it is impossible to determine on appellate review if NCNB recovered the entire amount of medical costs owed by the tortfeasor. I would remand the case to allow the district court to determine the portion of the settlement allocable to medical costs. *See Jones v. McCaskill*, 99 N.C.App. 764, 394 S.E.2d 254 (N.C.App.1990) (separating damages under Wrongful Death Act recovery).

fered to pay $1,160 ($1500 minus the Plan's share of attorneys' fees), the amount it contends is the maximum allowable under the Wrongful Death Act's antisubrogation provision. N.C.Gen.Stat. § 28A–18–2(a). Therefore, although the Plan paid for Bristow's medical expenses and these medical expenses were also, in some as yet undetermined amount, recovered from the tortfeasor, NCNB hopes to rely on the Act's antisubrogation provision to secure a double recovery for Bristow's beneficiaries.

## II.

Under North Carolina law, it is an open question whether the Plan's subrogation right for recovered medical expenses is barred by the Wrongful Death Act's antisubrogation provision. Although the majority rejects Liberty's state law argument out of hand, *see* Majority Op. at pp. 1386–88, it ignores *Bowen v. Constructors Equip. Rental Co.*, 283 N.C. 395, 196 S.E.2d 789 (N.C.1973), where the North Carolina Supreme Court stated that it was "improbable that the General Assembly intended that recovery for [medical, hospital, and funerary costs] should be exempt from liability for the payment of the debts and liabilities of the decedent...." *Id.* 196 S.E.2d at 807 (dicta). Although *Bowen*'s statement is persuasive, *see United Services Auto. Ass'n v. Barger*, 910 F.2d 321 (6th Cir.1990) (dicta is valuable source for federal court attempting to predict state law), because the Court expressly refrained from deciding the issue, it does not control our decision. Assuming *arguendo* that the North Carolina Supreme Court would interpret the Act to bar the subrogation of medical benefits that have been paid by an ERISA Plan and subsequently recovered from the tortfeasor, I conclude that the Act would be preempted by ERISA.

ERISA's preemption clause is "conspicuous for its breadth. It establishes as an area of exclusive federal concern the subject of any state law that "relate[s] to" an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). ERISA's preemption clause has re-

peatedly been interpreted to preempt state laws infringing upon ERISA Plan subrogation rights.

In *Hampton Indus., Inc. v. Sparrow*, 981 F.2d 726 (4th Cir.1992), an ERISA plan insured was injured in an accident. The insured's plan paid $20,278.53 of her medical costs, and she later recovered $25,000 from the tortfeasor. When the plan attempted to subrogate from the insured's recovery, she refused, arguing that subrogation was barred by N.C.Gen.Stat. § 44–50, which limits a medical provider's recovery of settlement funds to fifty percent of the amount of damages recovered, exclusive of attorneys' fees. *Id.* at p. 728. Relying on *FMC*, 498 U.S. at 52, 111 S.Ct. at 403, we held that the statute was preempted by ERISA because it interfered with the Plan's subrogation rights. *Id.* at p. 6; *see also Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990); *Baxter ex rel. Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989).

The majority distinguishes *Hampton*, arguing that in this case the wrongful death recovery was for the benefit of Bristow's beneficiaries, and, under North Carolina law, could not be applied as an asset of the estate. The majority ignores that the Plan seeks to subrogate against the part of the settlement that was paid solely *because of Bristow's medical expenses.* Of course the Plan cannot seek to subrogate any part of the settlement that was recovered by Bristow's beneficiaries for their personal losses. However, the Plan is entitled to be repaid from the part of the settlement that was provided solely as compensation for Bristow's medical costs.

The majority's reading of *Hampton* is far too subtle to stand in light of Congress' intent to preempt state laws encroaching on ERISA Plan subrogation rights. North Carolina may not, by artfully structuring its Wrongful Death Act, deprive an ERISA plan of its subrogation rights. The controlling issue is whether the state law "relates to" the ERISA plan—not whether the North Carolina Legislature chooses to de-

**1392**

clare that recovered medical costs will, or will not, be treated as assets of the estate.[3]

One of the reasons for the breadth of ERISA's preemption clause is that Congress intended ERISA to establish *"uniformity* in employee benefit laws." *Holland v. Burlington Indus. Inc.*, 772 F.2d 1140, 1147 (4th Cir.1985) (emphasis in original); *FMC*, 498 U.S. at 60–61, 111 S.Ct. at 408–09; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983) (discussing ERISA's legislative history); *Hampton*, at p. 729. By ensuring uniformity, Congress protected plan administrators from a patchwork of conflicting state and federal regulations that would "complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." *FMC*, 498 U.S. at 60, 111 S.Ct. at 408 (citations omitted); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 142, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990) (Congress sought to "ensure that [plans] would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among states ...").

This Plan covers employees in 24 states and, under the majority's approach, is subject to directly conflicting state law approaches to the subrogation of medical costs paid on behalf of deceased tort victims.[4] While I do not doubt that the Plan is capable of complying with each states' antisubrogation laws, I am equally satisfied that requiring it to do so is contrary to the will of Congress. In this case, as in

*Hampton*, the Plan administrator has been subjected to "different risks in different states." *Hampton*, at p. 729.

## III.

I also disagree with the majority's conclusion that the Plan has waived its right to argue that it is entitled to "equitable subrogation" to prevent Bristow's beneficiaries from being unjustly enriched. In its complaint, Liberty asserted its "subrogation rights according to the Plan and Federal law." Subrogation, even when based on a contract, is driven by equitable concerns.[5] Furthermore, although the majority states that the record contains only "one, minor reference to equitable subrogation in the entire record", I note that immediately following the "minor reference" mentioned by the majority, Liberty expressly raised the effect of *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.1990), a case dealing with unjust enrichment under ERISA.

## IV.

I believe that this case must be remanded for a factual finding as to what portion of Bristow's beneficiaries' settlement represents recovery of his medical costs. To the extent that the Wrongful Death Act's antisubrogation provision would bar the subrogation of sums recovered by Bristow's beneficiaries on account of Bristow's medical costs, I would rule that it is

---

**3.** ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A) (states retain the power to regulate insurance), does not apply. If it did the Plan would be exempted by the "deemer" clause, 29 U.S.C. § 1144(b)(2)(B), because it is self-funded.

**4.** In its brief, Liberty argues that it will be subjected to seven different approaches to subrogating wrongful death benefits, including (1) full subrogation, (2) full subrogation minus attorneys' fees, (3) subrogation up to a certain dollar amount, (4) subrogation only if the heirs survive, (5) no subrogation because monies pass directly to heirs without passing through the estate, (6) no subrogation, and (7) states where the law is unclear.

**5.** *Hocker v. New Hampshire Ins. Co.*, 922 F.2d 1476, 1485 (10th Cir.1991) (subrogation is "a device whereby a court compels the ultimate payment of an obligation by the party who in good conscience ought to pay it."); *General Ins. Co. of America v. Faulkner*, 259 N.C. 317, 130 S.E.2d 645, 651 (N.C.1963) ("Subrogation originated in equity and is a creature of equity. Its object is the prevention of injustice and its basis is the doing of complete, essential, and perfect justice between all parties without regard to form."); Appleman, *Insurance Law and Practice* § 4981 (Subrogation is a doctrine governed by equity).

preempted by ERISA. Therefore, I respectfully dissent.