# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3803

_____

| | | |
|---|---|---|
| Administrative Committee of the Wal-Mart Stores, Inc., Associates' Health and Welfare Plan, | * * * * | |
| Appellant, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Evelyn Soles, as personal representative for the estate of Patrick J. Hollander; William Diggs, as stakeholder, | * * * * | |
| Appellees. | * | |

_____

Submitted: May 15, 2003
Filed: July 21, 2003

_____

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

_____

MAGILL, Circuit Judge.

The Administrative Committee of the Wal-Mart Stores, Inc., Associates' Health and Welfare Plan (the "Committee") appeals the district court's[1] grant of summary

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

judgment for defendant William Diggs.[2]  The Committee sought to enforce the reimbursement provision of the Wal-Mart Employee Benefit Plan (the "Plan") pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461 (2000).  The district court found that the Committee's claims were time barred, and, in the alternative, meritless.  We agree that the Committee's claims are barred and affirm.

I.

The facts are undisputed.  The Plan is an employer sponsored, self-funded health and welfare employee benefit plan, which is governed by ERISA and contains a reimbursement provision.[3]  The Plan is administered by the Committee in Rogers,

_____

[2]Separate named defendant Evelyn Soles was never served with a summons or complaint in this matter.

[3]The 1996 "RIGHT TO REDUCTION AND REIMBURSEMENT (SUBROGATION)" Plan provision provides, in relevant part:

The Plan has the right to . . . recover (subrogate) 100% of the benefits previously paid by the Plan to the extent of any and all of the following payments:
- Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.
- Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.
- Business and homeowners medical liability insurance coverage or payments.
- Attorney's fees.

. . . .

The Plan requires that you or your covered dependent cooperate to guarantee reimbursement to the Plan from third party benefits.  Failure

-2-

Arkansas. The Committee appoints individuals to assist in the day-to-day administration of the Plan (collectively "Plan Administrator").

Patrick Hollander was a Wal-Mart employee in Myrtle Beach, South Carolina; he was covered by the Plan. On April 25, 1996, Hollander was struck by a car driven by J.W. Todd and then by a second car driven by Jamie Lee Hucks. Hollander died

> to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have accepted benefits.
> . . . .
> These rights apply regardless of whether such payments are designated as payment for, but not limited to:
> - Pain and suffering
> - Medical benefits
> - Other specified damages
> - Whether the participant has been made whole (i.e., fully compensated for his/her injuries):
> . . . .
> To aid the Plan in its enforcement of its right of recovery, reimbursement, and subrogation, the participant must, at the Plan's request and at its discretion:
> - Take any action
> - Give information
> - Execute documents so required by the Plan
> Failure to aid the Plan and to comply with such requests may result in the Plan withholding benefits, services, payments, or credits due under the plan.
> Subrogation is when Wal-Mart pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney.

J.A. at 71-72 (emphasis added).

-3-

on April 29, 1996. Hollander's hospitalization and medical treatment resulted in charges of $48,837.99, which the Plan paid.

Hollander had one daughter, Kristen Hollander. Kristen now resides in South Carolina with Hollander's mother, Evelyn Soles, the duly appointed personal representative for Hollander's estate (the "Personal Representative"). William Diggs is an attorney representing the estate of Hollander, including Kristen's interests.

The Personal Representative filed a tort action in South Carolina state court ("tort action") alleging (1) a dram shop violation against numerous defendants on behalf of Hollander under the South Carolina survival statute[4]; (2) a dram shop violation against numerous defendants on behalf of Hollander's beneficiary, Kristen, pursuant to the South Carolina wrongful death statute[5]; and (3) a claim for negligence

---

[4]South Carolina Code section 15-5-90 entitled "Survival of right of action" provides: "Causes of action for and in respect to . . . all injuries to the person . . . shall survive both to and against the personal or real representative, as the case may be, of a deceased person . . . any law or rule to the contrary notwithstanding." S.C. Code Ann. § 15-5-90 (2002).

[5]South Carolina Code section 15-51-10 entitled "Civil action for wrongful act causing death" provides:

> Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against this personal representative.

against Todd and Hucks under both the survival and wrongful death statutes of South Carolina.[6] Damages were alleged at $1,000,000 on the survival claims and $10,000,000 on the wrongful death claims.

On January 15, 1997, Todd's automobile insurer offered to pay $100,000, the limit of Todd's liability policy. The Personal Representative accepted this amount in complete settlement and compromise of both the wrongful death and survival claims against Todd and his family ("Settlement I"). The probate court approved Settlement I and ordered the proceeds apportioned as follows: $90,000 to the wrongful death action, $10,000 to any claim for survival, and $25,000 in attorney's fees to be paid from the wrongful death proceeds. On the same day, Todd's attorney faxed a letter to the Plan Administrator explaining Settlement I.

The following day Diggs faxed a letter to the Plan Administrator informing him of the settlement with Todd as well as the nature of the South Carolina wrongful death and survival statutes. The letter stated, in part,

---

S.C. Code Ann. § 15-51-10.

South Carolina Code section 15-51-20 entitled "Beneficiaries of action for wrongful death; by whom brought" provides:

> Every such action shall be for the benefit of the wife or husband and child or children of the person whose death shall have been so caused, and, if there be no such wife, husband, child or children, then for the benefit of the parent or parents, and if there be none such, then for the benefit of the heirs of the person whose death shall have been so caused. Every such action shall be brought by or in the name of the executor or administrator of such person.

S.C. Code Ann. § 15-51-20.

[6]See supra notes 4 and 5.

We would ask that you agree that Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander's statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart's rightful interest in this case lies against the assets of the estate of Patrick Hollander which include the $10,000.00 fund allocated as a result of the survival action which we have maintained on his behalf.

J.A. at 57-58.

On January 23, 1997, in a letter addressed to Todd's attorney and carbon copied to Diggs, the Plan agreed to accept the $10,000 from Settlement I, but stated that "[t]he Plan will pursue the remainder of its subrogation interest from future settlements received by the Hollander Estate." J.A. at 44.

On March 25, 1997, Diggs sent the Plan Administrator a check from his trust account in the amount of $10,000. The check was accepted and the funds applied toward reimbursement, leaving an outstanding balance of $38,837.99.

Thereafter, Diggs continued his efforts to obtain settlements or judgments against the other defendants to the tort action. The Plan Administrator requested and received periodic updates from Diggs as to the status of the proceedings to collect from third parties.

On March 2, 2000, Diggs wrote the Plan Administrator and explained that because Hollander "never regained consciousness . . . we were not able to develop any evidence to warrant payment to him in a survival action for pain and suffering. The settlement the estate has agreed to is structured and will pay Mr. Hollander's daughter payments throughout her life" ("Settlement II"). J.A. at 66. Diggs offered to pay the Plan $10,000 from Settlement II toward the outstanding medical expenses.

On April 6, 2000, the Plan Administrator responded and refused the $10,000:

> Please be advised the additional $10,000.00 making a total of $20,000.00 settlement you offered in your letter is not acceptable. The Plan requires 100% reimbursement from any settlement. . . .
>
> Referring to the previous telephone conversations and letters [between the Plan Administrator and Diggs,] I see that the Plan agreed not to pursue 100% reimbursement from [Settlement I]. It was agreed that reimbursement would be made once settlement was obtained from the other parties involved in this tragic accident.
>
> Please forward a check for the full amount due the Plan as previously agreed. Please be advised the Plan requires reimbursement from any settlement, including whether or not the settlement was designated as a wrongful death settlement or otherwise.

J.A. at 67.

On April 8, 2000, Diggs replied, informing the Plan Administrator that Settlement II had not yet been approved by the court and stating:

> [i]n order to obtain court approval of the settlement, and thus the payment of $38,837.99 to your plan, please provide me with the language in your plan which requires 100% reimbursement to you under the circumstances of the instant case. I will need this language in order to present it to the court for approval. Please understand that we acknowledge that the law of this Circuit supports the position you have taken in your letter of April 6, 2000. *See* United McGill Corp. v. Stinnett, 154 F.3d 168 (4th Cir. 1998).

J.A. at 69.

On April 11, 2000, the Plan Administrator faxed a written response and attached a copy of the relevant language from the Plan in effect in 1996 and the version that became effective on January 1, 2000.[7] The letter stated that the Plan specifically requires "100% reimbursement from any settlement and no reduction for attorneys' fees." J.A. at 70.

The Plan Administrator received no response from Diggs. On October 11, 2000, the Plan Administrator sent Diggs a request for a status update:

> It has just come to my attention that I have not heard from you since your letter dated April 8, 2000, at which time you requested a copy of our Plan language in order to obtain court approval of the settlement and payment of the Plan's $38,837.99 reimbursement interest. Please advise what is the status of settlement and/or settlement disbursement.

J.A. at 80.

On October 19, 2000, Diggs answered the inquiry, indicating that as a result of Plan Administrator assertions and reliance on United McGill Corp., which did not involve a wrongful death claim, Diggs was led to believe that case law required 100% reimbursement to the Plan. However, Diggs stated,

> [a] more complete review of the case law from the United States Court of Appeals for the Fourth Circuit . . . shows that Wal-Mart has misrepresented the legality and breadth of its subrogation interest, at least in its scope, as applicable to this case, which is a wrongful death case.

J.A. at 81. Diggs also requested an explanation as to why Wal-Mart was entitled to the previous $10,000 received from Settlement I: "Wal-Mart was never entitled to

---

[7]See supra note 3.

claim an interest in wrongful death proceeds generated in favor of Mr. Hollander's daughter, including the $10,000.00 previously paid to you." J.A. at 82.

Diggs and the Plan Administrator exchanged a few more letters, requests for information, and requests for status updates. On November 3, 2000, Diggs indicated by letter that "[w]e have entered into a structured settlement for Mr. Hollander's daughter. A sufficient amount of funds were held in trust to satisfy Wal-Mart's subrogation claim." J.A. at 84. The Plan Administrator's response letter cited McInnis v. Provident Life & Accident Ins. Co., 21 F.3d 586 (4th Cir. 1994), which held that North Carolina's wrongful death statute was preempted by ERISA, and indicated "I trust you will be forwarding reimbursement to my attention in the very near future." J.A. at 97.

On May 17, 2000, the state court entered an order approving Settlement II. The court authorized the Personal Representative to accept $130,000 "now and future periodic payments in the name of Kristen Hollander with a . . . guaranteed value" of $769,584.20, with "expected benefits" totaling $1,153,757.00 "as settlement in full of any and all liability for any claims, liens, causes of action, settlements, judgments or the like that said Personal Representative of the Estate of Patrick Hollander has or might have" against the defendants to the tort action. J.A. at 110-11.

On November 21, 2000, Diggs notified the Plan Administrator that he felt misled as to the law applicable to the Committee's claim for reimbursement. Diggs claimed that "in Mr. Hollander's case, there was no evidence of any conscious pain and suffering and therefore, no evidence to support a survival claim." J.A. at 99. Furthermore, Diggs stated,

> [i]n Mr. Hollander's case, the damage claim at issue was the wrongful death settlement proceeds belonging to Mr. Hollander's daughter, not Mr. Hollander or his estate. Under such circumstances, the law in this

Circuit provides that we are not responsible for the payment of Wal-Mart's subrogation claim.

Moreover, consistent with the foregoing, it appears that the $10,000.00 previously paid to Wal-Mart should be refunded. Please make plans to do so.

J.A. at 99.

On November 30, 2000, the Plan Administrator responded that it would continue to insist on 100% reimbursement "based on the clear, plain reimbursement provision of the Plan and in accordance" with Fourth Circuit case law. J.A. at 100. Furthermore, the Plan Administrator indicated that failure to forward the amount due would result in legal action.

On February 17, 2001, the Plan Administrator, by letter, informed Diggs that the Committee had decided to pursue the 100% reimbursement from Settlement II in accordance with the Plan's language. This letter indicated that the file was turned over to the legal department.

On March 18, 2002, the Plan filed a complaint in the district court, alleging a claim for equitable relief under ERISA, 29 U.S.C. § 1132(a)(3)(B). Specifically, the Plan, as a fiduciary, sought restitution and imposition of a constructive trust on the proceeds of Settlement II. The district court held: (1) the Plan's claims were barred by the applicable statute of limitations; and (2) even assuming, arguendo, the claims were not barred, the claims were meritless. This appeal follows.

II.

We review a district court's grant of summary judgment de novo, using the same standards as the district court. Ecklekamp v. Beste, 315 F.3d 863, 867 (8th Cir. 2002) (citation omitted). Summary judgment is only appropriate when, viewing the

-10-

facts and inferences in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (2003); Bennett v. Federated Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir. 1998) (citations omitted).

Despite the Committee's many arguments on appeal, the dispositive issue is whether the Committee's claim is time barred. We answer this question in the affirmative and, therefore, do not address the Committee's other arguments.

Because ERISA does not contain a statute of limitations, the court "borrow[s] the most analogous state statute of limitations." Duchek v. Blue Cross & Blue Shield of Dist. of Neb., 153 F.3d 648, 649 (8th Cir. 1998) (citation omitted). "[T]he characterization of plaintiff's claim for statute of limitations purposes is a question of federal law." Johnson v. State Mut. Life Assurance Co. of Am., 942 F.2d 1260, 1262 (8th Cir. 1991) (citations omitted). Federal law also determines when the cause of action accrues. Bennett, 141 F.3d at 838 (citations omitted).

The Committee argues that the district court erred in applying Arkansas Code Annotated section 16-56-105,[8] a three-year statute of limitations, because this action is most properly characterized as a breach of written contract action to which Arkansas Code Annotated section 16-56-111,[9] a five-year statute of limitations,

---

[8]Arkansas Code Annotated section 16-56-105 states, in relevant part, that "[t]he following actions shall be commenced within three (3) years after the cause of action accrues: (1) All actions founded upon any contract, obligation, or liability not under seal and not in writing . . .; (3) All actions founded on any contract or liability, express or implied." Ark. Code Ann. § 16-56-105 (2002).

[9]Arkansas Code Annotated section 16-56-111 states, in relevant part, that "[a]ctions to enforce written obligations, duties, or rights . . . shall be commenced within five (5) years after the cause of action shall accrue." Ark. Code Ann. § 16-56-111.

should apply. We need not decide which statute of limitations applies because under either the three- or five-year statute of limitations, the Committee's claim is barred because more than five years have passed since this cause of action accrued.

This action was filed on March 18, 2002; thus, the Committee's claim is barred under either statute if it accrued prior to March 18, 1997. The Committee argues that the date on which the claim accrued was April 8, 2000: the date it became aware of Settlement II. We disagree.

Generally, this court applies the discovery rule to determine when a claim accrues. Union Pacific R.R. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998) (holding that absent a contrary mandate from Congress, the discovery rule determines when a cause of action accrues in a federal question case). The discovery rule provides that "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." Id. (citations omitted).

Diggs notified the Plan Administrator in writing, on January 16, 1997, that the Personal Representative had entered into Settlement I for $100,000 and that "Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander's statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart's rightful interest in this case lies against the assets of the estate of Patrick Hollander. . . ." J.A. at 58. The district court found that this statement was "a clear and unequivocal repudiation of the Committee's claimed right to 100% reimbursement from the proceeds of any settlement related to the accident." J.A. at 129. We agree and, accordingly, find that the claim accrued on January 16, 1997.

The Committee fails to offer any legal support for its contention that the statement "[t]he Plan will pursue the remainder of its subrogation interest from future settlements received by the Hollander Estate," J.A. at 44, somehow tolled the statute

of limitations. As such, we agree with the district court that summary judgment was appropriate because the Committee's cause of action was time barred.

## III.

For the aforementioned reasons, we affirm the judgment of the district court.

BEAM, Circuit Judge, dissenting.

I suggest that the court's opinion may be appropriately morphologized by the expression "no good deed goes unpunished."[10] Believing this should not be true, I respectfully dissent.

At the request of Evelyn Soles, personal representative of the Estate of Patrick J. Hollander, made through her attorney, William I. Diggs, now the stakeholder of part of the proceeds of a substantial tort settlement, the employees of Wal-Mart acting through an administrator of their ERISA benefit plan, performed a good deed by agreeing to accept partial payment of a subrogation claim from a portion of the monies derived through a modest settlement with one of several potential tortfeasors. Quoting only a *part* of the letter of request from attorney Diggs to Wal-Mart, dated January 16, 1997, the court now holds that the letter and Wal-Mart's act of acceptance triggered the running of the five-year statute of limitation that clearly applies in this action. With this result, I disagree. And, in my view, the portion of the above-mentioned letter not quoted or discussed in the court's opinion illustrates the error.

Two separate settlements occurred in this case. The first settlement, set forth in the January 16 letter, involved James Todd, II, the driver of the first vehicle that

---

[10]Clare Booth Luce, in H. Faber, The Book of Laws, 1980.

struck Mr. Hollander. The second settlement, consummated on May 17, 2000, involved the operator of the second car that struck Mr. Hollander and two liquor-dispensing establishments.

The January 16, 1997, letter stated in greater part as follows:

Survival action proceeds are typically generated when a deceased is not killed instantly but rather experiences conscious pain and suffering prior to death. While we have no evidence that indicates Mr. Hollander suffered conscious pain and suffering, we have nevertheless agreed to allocate Ten Thousand and No/100s ($10,000.00) Dollars [of the $100,000 settlement] to the survival claim. This is in keeping with our view of South Carolina case law with respect to the issue of fund allocation. We did this to insure that there was some fund which could begin to satisfy claims against Mr. Hollander's estate including the subrogation interest of Wal-Mart.

As an employee of Wal-Mart in Myrtle Beach, South Carolina, Mr. Hollander received the generous benefits from the plans which have been established by Wal-Mart and which are governed by the provisions of ERISA. We would ask that you agree that Wal-Mart has no subrogation claim against any monies which are allocated for receipt by Mr. Hollander's statutory beneficiaries as a result of their wrongful death claim, and that Wal-Mart's rightful interest in this case lies against the assets of the estate of Patrick Hollander which include the $10,000.00 fund allocated as a result of the survival action which we have maintained on his behalf.

Your acknowledgment in this regard will enable us to conclude *this portion of the case* and allow for the distribution of proceeds to Mr. Hollander's daughter. Of course, a Conservator or Guardian will be appointed on behalf of the minor child to receive these monies for her. This is a position which is required and regulated by South Carolina law and which must be bonded.

Joint Appendix at 57-58 (emphasis added). It is obvious that this letter and the resultant agreement by Wal-Mart directed itself only to "this portion of the case." In other words, this particular settlement arrangement involved only Mr. Todd's liability and the apportionment requested by personal representative Soles (who asserted both a wrongful death *and* survival claim) and approved by the South Carolina court. While it is possible that Mr. Diggs' analysis of the availability of the "wrongful death" proceeds to the satisfaction of the subrogation claim was wrong, Wal-Mart had no immediate duty to institute litigation against these wrongful death funds from this particular tortfeasor and was certainly not precluded from voluntarily accepting the $10,000 payment and proceeding against monies later generated from other, unrelated (and perhaps unknown at the time) tortfeasors. Indeed, Mr. Diggs' letter referred only to Wal-Mart's ERISA plan (contract) rights in the Todd money not the later negotiated funds from the additional parties.

It is highly probable, however, that attorney Diggs was correct that under South Carolina and Fourth Circuit precedent, the $90,000 in wrongful death proceeds, as approved by the court, were properly allocable only to the statutory beneficiaries and were not available to satisfy the ERISA claim, Liberty Corp. v. NCNB National Bank of South Carolina, 984 F.2d 1383, 1388-89 (4th Cir. 1993), although the court's decision implies a contrary conclusion without any discussion of the matter. Unless Wal-Mart had the right and, thus, the duty to proceed to collect its subrogation claim against the $90,000 allocated by the court to the wrongful death claim in January of 1997,which right and duty Wal-Mart did not have under the holding in Liberty Corp.,[11] the letter of January 16 could have triggered nothing by way of commencement of the running of a statute of limitations.

_____

[11]Although Liberty Corp. involved North Carolina law, I find no material difference between the applicable North Carolina and South Carolina statutes.

-15-

The settlement of May 17, 2000, is a different story. The court order approving this settlement states, in part:

> . . . Kristen Hollander, is the decedent's only surviving heir, that she is the statutory beneficiary under S.C. Code Ann. § 15-51-20 (Supp. 1998), and that she is entitled to any damages recovered thereunder for the wrongful death of Decedent. It appears further that S.C. Code Ann. § 15-51-40 (Supp. 1998) provides that any damages recovered for the wrongful death of a decedent would be distributed to surviving issue according to the laws of intestacy of this State as set forth in S.C. Code Ann. § 62-2-102 (1987) and § 62-2-103 (1987).
>
> It appears further that Decedent died intestate and that any damages recovered for any conscious pain and suffering of Decedent, pursuant to S.C. Code Ann. § 15-5-90 (1976), would likewise be distributed according to the laws of intestacy. Said damages are a probate asset of the Decedent's estate, must be administered as such by the personal representative and cannot be disbursed without bond being posted or prior written authorization of this Court.
>
> . . . .
>
> After proper and necessary inquiry, the results of which are set forth herein above, and examination of Petitioner's Petition, this Court is of the opinion that the proposed settlement agreement set forth in the Petition for Approval of Wrongful Death and *Survival Claim* Settlement should be approved and that this Court has the authority to approve said settlement pursuant to the provisions of S.C. Code Ann. § 15-51-42 (Supp. 1998).
>
> Now, therefore, it is hereby ORDERED that Evelyn Soles, as Personal Representative of the Estate of Patrick Hollander, be and hereby is authorized to accept from Jamie Lee Hucks Burroughs, Myrtle Beach Food Systems, Inc., and NYP Corp., or other entities on their behalf, the sum of One Hundred Thirty Thousand and No/100 ($130,000.00) Dollars now and future periodic payments in the name of

Kristen Hollander with an expected value guaranteed value of Seven Hundred Sixty-nine Thousand Five Hundred Eighty-four and 02/100 ($769,584.20) [sic] Dollars and expected benefits total One Million One Hundred Fifty-three Thousand Seven Hundred Fifty-seven and No/100 ($1,153,757.00) Dollars as settlement in full of any and all liability for any claims, liens, causes of action, settlements, judgments or the like that said Personal Representative of the Estate of Patrick Hollander has or might have at some time . . . arising out of the motor vehicle collision that occurred on April 25, 1996, including, but not limited to, all claims, liens, actions, causes of action, judgments or the like for the wrongful death and *any conscious pain and suffering of Decedent* and that Petitioner was, is and shall be responsible for the proper distribution of the aforementioned proceeds among the wrongful death and *survival claim beneficiaries* in accordance with law and those persons and entities protected by the contemplated covenant not to sue and policy release are relieved and discharged from liability with respect to the proper distribution of the aforementioned proceeds. The proceeds that are recovered for *conscious pain and suffering* are a probate asset of the Decedent's estate, must be administered as such by the personal representative and cannot be disbursed without bond being posted or prior written authorization of this Court. Furthermore, no disbursement of either the wrongful death or *conscious pain and suffering proceeds* shall be made by Evelyn Soles, as Personal Representative of the Estate of Patrick Hollander, to or for the benefit of Kristen Hollander without first complying with S.C. Code Ann. §§ 62-5-431 and -432 (1987).

Joint Appendix at 109-112 (emphasis added). Thus, this settlement, but not the first settlement, provided funds to fully satisfy the balance of Wal-Mart's subrogation interest. The South Carolina court's apportionment of the proceeds of this second settlement brings the Wal-Mart claim squarely within McInnis v. Provident Life & Accident Insurance Co., 21 F.3d 586 (4th Cir. 1994). Under McInnis, the ERISA rights inquiry is directed at "whose damage claim is at issue" in the settlement. Id. at 589. Here, as in McInnis, "the damages recovered as settlement [as noted in the court order] clearly included those belonging to [the wrongful death beneficiary] and [the estate]." Id. at 590. Accordingly, under McInnis, Wal-Mart is entitled to recover

its subrogation claim from the fruits of the second settlement and if this result conflicts with South Carolina wrongful death law, state law is pre-empted by ERISA. Id. Thus, Ms. Soles and Mr. Diggs' refusal to pay Wal-Mart's claim after the second settlement gives Wal-Mart a cause of action commencing on May 17, 2000, providing a time frame well within the applicable statute of limitations. The dismissal of the action on limitations grounds is error.

Accordingly, I dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.